L. B. MITCHELL v. J. A. RUSHING, ET AL.

Decided April 15, 1909.

1.—Charge—Construction of Written Instrument.

Though it is the duty of the court to construe a written contract, error in submitting the issue as to its legal effect to the jury is ground for reversal only where the jury places a wrong construction on the instrument.

2.—Contract—Construction.

The owners of land contracted with a promoter who was to supervise the laying off, improvement and sale of it as a suburban addition. From the sales the owners were to receive $2,300. The promoter was thereafter to have one-fourth of all further sales and to receive conveyance of an undivided one-fourth interest in the lots remaining unsold, and he bound himself to exercise reasonable diligence to sell the property. Held, that his right to an undivided interest in the unsold lots was not dependent on the performance of his agreement to exercise reasonable diligence to sell the remainder of the property. The remedy for a breach of such independent covenant was in an action for damages, not in a forfeiture of his commissions.

3.—Contract—Parol Evidence.

Where a contract described the property which was its subject as an addition to a certain town, referring to it by name, but not to any deed or record identifying the lots and blocks specified, it was a question of fact to be determined by evidence as to what property was included within the description.

4.—Practice on Appeal—Briefs.

The rules of courts governing the presentation of errors assigned by briefs of the parties are directory only and in aid of the proper dispatch of business, and where the court in the interest of justice chooses to consider matters improperly presented by appellant, the appellee can not be heard to complain.

5.—Contract—Services—Compensation.

One who by contract acquires the right to receive certain property as compensation for accomplishing a definite service can not, when he has performed the service, be deprived of such compensation on the ground that he has not used adequate exertions to accomplish it.

6.—Appeal—Cross-Assignments.

Error to the prejudice of an appellee can not be considered in the absence of cross-assignments by him presenting the question.

Appeal from the District Court of Bosque County. Tried below before Hon. O. L. Lockett.

*S. H. Lumpkin,* for appellant.—When the pleadings, written evidence and admissions of the parties entitled the plaintiff to recover a judgment for certain and specific things which are manifest by the record, and there is no matter of fact to be further ascertained affecting the rights of the parties to the suit, then, when the case is reversed, it becomes the duty of the Court of Civil Appeals to render such judg-

ment and decree as the court below should have rendered. Sayles' Civil Statutes, art. 1027, Acts 1892, p. 25; Houston & T. C. Ry. Co. v. Strycharski, 92 Texas, 1.

No written contract can be added to, altered or changed by parol testimony; nor can contemporaneous oral agreements be set up to vary such contract in writing; and when, as in this case, the parties have embodied the terms of their agreement in writing, neither party can give oral evidence that they did not mean that which the instrument, when properly read, expresses or legally implies, or that they meant something inconsistent therewith. Rule 20, Gen. Provisions, Sayles' Civil Statutes, art. 2299, and authorities thereunder cited; Horan v. Long, 11 Texas, 229; Hunt v. White, 24 Texas, 643; Yetter v. Hudson, 58 Texas, 611; Faires v. Cockrell, 88 Texas, 428; Belcher v. Mulhall, 57 Texas, 19.

The court erred in failing and refusing, in all of its charge to the jury, to define the contract sued upon, leaving this question of law for the jury to construe; and in its third paragraph to the jury assumed that the said contract provided for auction sales, and that it required all the land and lots to be sold within the six months from its date, which was a violation of the very terms of said contract. Soell v. Hadden, 85 Texas, 187; Summers v. Mills, 21 Texas, 91; Whitaker v. Bledsoe, 34 Texas, 402; Vineyard v. Smith, 34 Texas, 457.

*J. S. Bounds* and *Cureton & Cureton,* for appellees.—In this case, the plaintiff having sued upon a written contract for specific performance of such contract and certain property claimed under such contract, and defendants having pleaded a failure of consideration on the part of the plaintiffs as to such contract and having introduced evidence to raise such issue of failure of consideration, it was not error upon the part of the trial court to submit such issue to the jury, as was done in this case. Brown v. Wheelock, 75 Texas, 391; Ward v. Worsham, 77 Texas, 180.

In this case, where the written contract sued upon bound and obligated the plaintiff to use "reasonable diligence" to sell the property in controversy, what would be "reasonable diligence" under such contract became and was an issue of fact to be determined by all the facts and circumstances, including the situation of the parties at the time of the contract, and their respective occupations, and including all the facts which were admitted in evidence in this case on such question of diligence, and the court committed no error in admitting such evidence and no error in submitting such issue to the jury. Moore v. Paris Oil & Cotton Co., 29 S. W., 821; 9 Texas Civ. App., 27; Haldeman v. Chambers, 19 Texas, 4; Taylor v. Merrill, 64 Texas, 496; Kirker v. Brazos County, 73 Texas, 56; Heidenheimer v. Cleveland, 17 S. W., 524.

The court did not err in submitting to the jury the construction in this case with reference to the lots and property embraced in the contract, because said lots and property were described in the indefinite language as follows: "Of those certain lots and blocks of land known as Fairview and Roundhouse Additions to Walnut Springs, except those already sold," because such language so describing the property

was indefinite, and became a matter of identification on the ground, and to be determined by the jury under the evidence. Elliott v. Whitaker, 30 Texas, 416; Linney v. Wood, 66 Texas, 27; James v. Koy, 59 S. W., 295.

The court did not err in permitting the defendant Rushing and others to testify, over plaintiff's objection, that all the lots and blocks of land north of Denmark street were not any part of Fairview or Roundhouse Additions to the town of Walnut Springs, and that the plaintiff was to give auction sales, and that if he did not sell all the lots at one auction sale he would give another, because a latent ambiguity arose in applying the contract to the land in controversy, and it was permissible for the defendants to show what land and property was known at that time as Fairview and Roundhouse Additions; and because it was permissible to show the manner of the plaintiff's selling the lots, and the contemplated sale of the lots, and how they might have been sold, as bearing upon the issue of "reasonable diligence" on the part of the plaintiff. Elliott v. Whitaker, 30 Texas, 416; James v. Koy, 59 S. W., 295; Giddings v. Day, 84 Texas, 608; Cook v. Oliver, 83 Texas, 562.

HODGES, ASSOCIATE JUSTICE.—The appellees were the owners of a tract of land situated in the suburbs of Walnut Springs in Bosque County, a portion of which they had mapped and platted, caused a copy to be placed of record in the office of the county clerk of that county, and designated it as "Fairview and Roundhouse Addition to Walnut Springs, Texas." Being desirous of selling those lots, on the 24th day of July, 1906, they entered into the following contract with the appellant Mitchell:

"This instrument is intended to witness the following contract, executed in duplicate, this day entered into by and between J. A. and C. C. Rushing, of the County of Bosque, State of Texas, hereinafter styled parties of the first part, and L. B. Mitchell, of Dallas County, State of Texas, hereinafter styled party of the second part, to wit: The said parties of the first part in consideration of the terms and considerations hereinafter specified give to the party of the second part the sole and exclusive right to sell for a period of six months from this date, the following described property, to wit: all those certain lots and blocks of land known as Fairview and Roundhouse Addition to the town of Walnut Springs, Bosque County, Texas, except those heretofore sold, upon the following terms and conditions:

"Said party of the second part agrees and binds himself to exercise reasonable diligence in his efforts to sell and dispose of the said property within the time specified and upon the terms hereinafter named. The said second party also agrees to direct and supervise the improvement and laying out said property by grading the necessary streets, staking off the lots and blocks and advertising the same preparatory to offering it for sale.

"All lots and blocks are to be sold for one-third in cash, balance in vendor's lien notes due in six and twelve months from date of sale, with interest at the rate of ten percent per annum, unless other terms offered are mutually acceptable to the parties to this contract.

"The said party of the second part agrees and binds himself to deliver and pay to the parties of the first part all moneys and notes received from the sale of said land, lots and blocks until the said parties of the first part shall have received the sum of twenty-three hundred dollars, and all moneys and notes received from the sale of said land in excess of the sum of twenty-three hundred dollars shall be divided between the parties to this contract on the basis of seventy-five percent to the parties of the first part and twenty-five percent to the party of the second part as his compensation for selling said lots and blocks.

"The parties of the first part agree and bind themselves to make general warranty deeds to the purchasers of all lots and blocks sold.

"The parties of the first part are to defray the expenses incurred in the preparation, advertising, and sale of said property.

"Should there be any unsold lots after said parties of the first part have received the sum of twenty-three hundred dollars coming to them, a one-fourth undivided interest in said lots so remaining unsold is to be conveyed by general warranty deed by the parties of the first part to the party of the second part.

"Should the entire property be sold within the time specified the said parties of the first part are to take their proportion of one-third in cash and two-thirds in notes, and the said party of the second part shall take the same proportion in cash and notes."

After the execution of this contract the appellant superintended the laying off and grading of the streets, according to the terms of his contract, and advertised an auction sale to take place on the 29th day of August following. On that day a large number of the lots were sold, and from which was realized in cash and notes the sum of $3410. The sum of $2300 was retained by appellees, and the excess over that sum was divided between the parties in the proportion specified in the contract. The appellant, who resided at Dallas, did not again return to Walnut Springs till a short time before the expiration of his option. Before leaving the latter place, however, he had an agreement with Bird & Morris, a firm of real estate agents, who also owned an interest in the property described in the contract, by which they were to represent him during his absence and to accept and close with any offers for the purchase of lots at satisfactory prices. Bird & Morris, in pursuance of that authority, sold a number of the lots, and the appellees also sold several of them. The exclusive right to dispose of the lots, which had been given to the appellant, expired on the 24th day of January, 1907. After that time a large number of the lots were sold by the appellees, from which they realized the aggregate sum of $2935. Of this they paid the appellant $172.82, which they claimed was his proportion of the receipts from lots sold during the six months in which he had been given the exclusive right to make sales, but refused to pay him any portion of the proceeds realized from the sales of the lots made after that time had expired. On the 12th day of February, 1908, the appellant filed this suit to recover one-fourth of the proceeds of the sales of the lots made by the appellees, and which they had refused to pay over to him, for a one-fourth undivided interest in the lots then unsold, and for partition.

The appellees answered by general and special exceptions, a general

denial, and specially denied that the contract sued on embraced any of the lots in Fairview and Roundhouse Addition, north of what was called Denmark Street as laid off and designated in the plat; that if the contract included any of those lots it was inserted by a mistake. They further pleaded a failure of consideration in that the appellant had failed to exercise reasonable and proper diligence in his efforts to sell said property. They also alleged that the appellant had agreed to return and hold other auction sales for the purpose of disposing of the remainder of the unsold lots, but had refused to do so.

The jury returned a general verdict in favor of the defendants, from which the appellant prosecutes this appeal.

In addition to the facts above mentioned the testimony shows that a plat of what was known as Fairview and Roundhouse Addition to Walnut Springs was placed of record in the office of the county clerk of Bosque County, showing the location of streets and alleys, together with the blocks and lots, numbered in the usual way. Denmark Street is shown as one of the public streets running east and west, and north of it are quite a number of lots and blocks included in the recorded map.

In view of the manner in which the errors charged have been presented by the appellant in his brief, we find it more convenient to discuss the questions involved without reference to the assignments in detail. But we think it proper in this connection to call the attention of counsel for appellant to the fact that in the preparation of his brief he has ignored most of the rules adopted for guidance in the preparation of cases for appeal. To refuse to consider the assignments in this case because of the failure to comply with those rules, would, we think, result in a miscarriage of justice, and for that reason alone we decline to sustain the objections made by the appellees.

The vital question presented is: Was the evidence sufficient to support the verdict and judgment? The suit is based upon the written contract hereinbefore set out, and this clearly entitled appellant to a judgment, unless his engagement to exercise reasonable diligence to dispose of the property during the six months of his exclusive option be treated as a condition upon the faithful performance of which his right to compensation was made to depend, and further unless the evidence justified the jury in finding that he had failed to comply with that provision of the contract. The appellant relies upon the following provision in the contract: "Should there be any unsold lots after said parties of the first part have received the sum of twenty-three hundred dollars coming to them, a one-fourth undivided interest in said lots so remaining unsold is to be conveyed by general warranty deed by the parties of the first part to the party of the second part (appellant)." The only defense urged against the enforcement of this provision is, the alleged failure on the part of the appellant to exercise reasonable diligence as he had agreed to do in making sales of the lots after the auction sale by him on the 29th of August, 1906. This defense is presented in the form of a plea of failure of consideration. The court below submitted the question to the jury with instructions to find in favor of the appellees in the event they found that appellant had not complied with this provision of his agreement.

Generally it is the duty of the court to construe written contracts and instruct the jury as to their legal effect, and it is error to submit such issues to the jury. Soell v. Hadden, 85 Texas, 187, 19 S. W., 1087; 1 Thompson on Trials, Sec. 1196. But such an error, when committed, is available on appeal as a ground of reversal only in the event the jury places a wrong construction on the written instrument; otherwise the error will be harmless. The verdict of the jury in this case can be accounted for only upon a construction which we think is erroneous; that is, that the right to an undivided interest in the unsold lots depended on the performance of the agreement to exercise reasonable diligence to sell the remainder of the property. The language of the contract is plain and unambiguous, and there is no necessity for resorting to extraneous circumstances, or parol testimony, to aid in its interpretation. But should this be done the testimony which the appellees offered in that connection strengthens the construction which we have placed upon it. It will be observed that the contract contains the provision that the appellant was not to receive any commissions on sales till after he had sold a sufficient number of lots to realize the sum of $2300. One of the appellees testified that the reason for inserting that provision was that they desired to first get back what the land had cost them and the expenses of making the sale. They estimated this at $2300. This accounts for why appellant's right to compensation was thus postponed till that sum was realized from his sales, and for the further fact that his commissions were fixed at the amount stipulated. The undisputed testimony shows that on the first day of the auction sales more than $2300 was received from the sale of lots. According to the plain language of the contract, he had then earned the compensation which appellees had agreed to allow him—one-fourth of the cash and notes in excess of $2300 and an undivided one-fourth of the lots remaining unsold. Any other construction would be treating the agreement to exercise reasonable diligence to dispose of all of the property, and that in which appellees bound themselves to convey an undivided one-fourth interest in the unsold lots, as mutually dependent covenants. The right to an undivided one-fourth of the unsold lots was only a part of the consideration which the appellant was to have for his services in selling a sufficient number of lots to make the receipts amount to $2300. It is not contended that at the end of the first day's sales appellant was not entitled to one-fourth of the excess of the money realized, nor is it disputed that he was also entitled to one-fourth of what his agents, Bird & Morris, sold thereafter. How, then, can it be said that he was entitled to one portion of the consideration which the contract gave him, and not to the other? No question is raised about appellant's having performed his contract, in part at least, and that appellees had accepted the benefits of his services and paid him a portion of that consideration. Having done this, they can not now be heard to say that he is not entitled to the remainder, unless they can point to a provision in the contract which confers upon them the right to do so. Wiley v. Inhabitants of Athol, 6 L. R. A., 343; Kauffman v. Raeder, 108 Fed., 171, 54 L. R. A., 247. The stipulations in this instrument must be treated as independent. The covenant by

which the appellees agreed to convey a part of the unsold lots, being only a part of the consideration, must be regarded as independent of that provision requiring the appellant to exercise reasonable diligence to sell all of the lots. Broumel v. Raynor, 68 Md., 47, 11 Atl., 833; Antonelle v. Kennedy, 140 Cal., 309, 73 Pac., 966; Deakon v. Blodget, 111 Cal., 416, 40 Pac., 159; Front Street M. & O. R. Co. v. Butler, 50 Cal., 577. The dominant purpose in construing a contract, in all cases, is to ascertain the real intent of the parties. Had the parties intended that a failure to press the sale after the auction on the 29th of August should forfeit the right of the appellant to any of the unsold lots remaining thereafter, they failed to use any language expressive of such a purpose. We must therefore regard the undertaking on the part of the appellant to exercise reasonable diligence to sell all of the property, as an independent covenant, for a breach of which the aggrieved parties might seek recompense in a separate action for damages, if any there were, or by a plea in reconvention in the present suit. There was no reason why they should have intended a forfeiture on the part of the appellant of any or all of his commissions, for a failure to continue to exercise reasonable diligence to the end of his term of six months, because it was to his interest, as well as to that of the appellees, that he should sell the remainder of the property as rapidly as possible and for as high a price as was practicable. The evidence is in conflict as to whether or not he agreed to have any other auction sales, or whether he did in fact exercise reasonable diligence in undertaking to sell the remainder of the lots; but in view of the disposition we make of the case, we think a determination of that issue is wholly immaterial, and that it should not have been submitted to the jury. The contract sued upon had the effect of investing the appellant with an undivided one-fourth interest in the lots belonging to the plat of land which he was to sell and which remained unsold after the auction sale made by him on the 29th of August, 1906. Morse & Raley v. Wren, 102 Texas, 129. The court should have so instructed the jury.

There is some controversy as to whether those lots lying north of Denmark Street were a part of the addition which the appellant was to sell. The contract merely describes the property as "all those certain lots and blocks known as Fairview and Roundhouse Addition to Walnut Springs." No reference is made to any deed or record for the purpose of identifying the lots and blocks specified. The appellant testifies that he was shown the plat which was of record, and this was pointed out to him as the property he was to sell. It is an issue of fact as to how many lots and what lots were properly to be included within the description mentioned in the contract. The appellees having raised that question by a proper pleading, it was a pertinent issue to be submitted to the jury. On account of the verdict being general, we can not say that the jury has passed upon that question. The case will therefore have to be remanded in order for this issue to be determined, and also for a partition of such property as the contract shows the appellant is entitled to have awarded to him in the division between him and the appellees.

The judgment is reversed and the cause remanded.

ON MOTION FOR REHEARING.

In their motion for rehearing the appellees insist that this court should not have considered the assignments presented in the appellant's brief in the original disposition of the case. A sufficient reply to this is found in the fact that we have already considered the assignments objected to. We understand that the rules which it is claimed were violated in presenting the assignments on this appeal were adopted for the convenience of the appellate courts, to aid in the rapid and orderly dispatch of the business, and are directory only. Having once waived the authority to disregard those assignments for noncompliance with the rules, and having performed whatever additional labor was thereby entailed, it would be inexcusable in us to now set aside what we have done solely on account of the objection made.

It is also contended by appellees that we erred in our construction of the contract made between the parties to this suit. They insist that the appellees and the appellant sustained the relation of principals and agent; that appellant's contract was that of a broker, in which he undertook to perform certain services for a stipulated compensation, and that the failure to perform those services in whole or in part would be a good defense against an action to recover compensation, or at least as to so much thereof as had not been properly earned. They further claim that the disposition we make of the case puts them in the attitude of having to pay the agent his compensation and then sue him for damages for a failure to perform the services he contracted to perform. This argument indicates a misconception of the nature and terms of the contract and of the true subject-matter of this suit. It may be conceded as a fact that appellant, Mitchell, was a broker, and as such entered into the contract to sell certain real estate for the appellees, and that this suit is for his compensation for making the sales in pursuance of that undertaking. The compensation Mitchell was to receive, and that for which he sues, was not to be gauged by the time he gave, or the energy he expended, or the degree of diligence he exercised in his efforts to sell the property, but by the results which he accomplished. When those results amounted to sales sufficient to enable the appellees to realize $2300, then, according to the plain terms of the contract, Mitchell had earned his compensation and was entitled to demand its payment. Had he been hired for a salary to give his services for a designated term, as an agent, or broker, and had failed in whole or in part to render the services which he had agreed to perform, then the rule relied on by the counsel for appellee would be applicable. Mitchell's agreement to exercise reasonable diligence to sell the property during the time he had the exclusive right to handle it was a covenant for the protection of the appelleees against damages such as might result from the loss of advantageous sales while the property was exclusively in Mitchell's hands, and was no part of the consideration for his commissions. Let us suppose that Mitchell had given his entire time and had exercised the utmost diligence to sell this property, but had failed to sell any or enough to realize the sum of $2300; clearly he would not have earned any part of the commissions and would be entitled to no compensation. On the other

hand, if he had given only a small fraction of his time to the sale of the lots and had been ever so careless in his efforts, but had succeeded in making sales of all of the property, there could be no controversy about his having earned his full commissions. Hence, whatever injury may have been sustained by the appellees by reason of the failure of Mitchell to exercise reasonable diligence in selling the lots would properly be classed as damages recoverable in an action for that purpose, and could not be made available as a defense under a plea of failure of consideration. It can not be said that a failure to exercise reasonable diligence in his efforts to sell the property was a failure to perform the consideration in this contract, unless it can also be said that the exercise of that diligence was itself the services for which he was to be paid. Appellees' construction of the contract is untenable, and the argument based upon it is equally so.

Appellees complain that in disposing of the case in the manner we have they are left practically remediless in recovering damages against Mitchell for the failure to exercise the reasonable diligence which he agreed to exercise in his efforts to sell the property. They claim that they filed in the trial court a plea in reconvention claiming damages, but that it was stricken out on exception. No cross-assignments having been presented in the record calling in question the correctness of this ruling of the court, we are not called upon to say whether or not the trial court erred in so doing. They were not forced to submit to that ruling without complaint; but having done so, must abide the consequences.

The motion is overruled.

*Reversed and remanded.*